**The below described is SIGNED.**

**Dated: August 8, 2014**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**




**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re:<br><br>**VICKI LEIGH BALDWIN,**<br><br>Debtor. | Bankruptcy Number: 13-21159<br><br>Chapter 7 |
| **GEORGE B. HOFMANN, as Chapter 7 Trustee,**<br><br>Plaintiff,<br><br>vs.<br><br>**DAVID L. DRABNER** and **MARLA SHELBY-DRABNER,**<br><br>Defendants. | Adversary Proceeding No. 13-2515<br><br>Judge William T. Thurman |

**MEMORANDUM DECISION**

The matters before the Court are the cross-motions for summary judgment filed by the Defendants David L. Drabner and Marla Shelby-Drabner (the “Drabners” or “Defendants”) and the Plaintiff George B. Hofmann (“Plaintiff”), the Chapter 7 Trustee in the underlying bankruptcy case

of Vicki Leigh Baldwin ("Debtor"). The Plaintiff commenced the above-captioned adversary proceeding on December 23, 2013, seeking to avoid and recover for the benefit of the estate an alleged preferential or fraudulent transfer made to the Defendants shortly before the Debtor declared bankruptcy.[1]

The Court conducted a hearing on the parties' cross-motions on June 19, 2014, at which hearing Matthew M. Boley appeared on behalf of the Plaintiff and J. Thomas Beckett appeared on behalf of the Defendants. The Court then took the matters under advisement. After carefully considering the parties' briefs and the arguments of counsel, and after conducting its own independent research of applicable law, the Court now issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[2]

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and § 157(a) and (b). The Plaintiff's complaint seeks to avoid and recover for the benefit of the estate a preferential or fraudulent transfer, making this a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H). The Court may enter a final order on the preference claim because it "stems from the

---

[1] The complaint also objected to any claim filed by the Drabners against the estate "until such time as [they] pay to the Trustee an amount equal to the aggregate amount" of the transfer at issue. Docket No. 1 at 7. The Drabners have not filed a proof of claim in the Debtor's main bankruptcy case.

[2] Any of the findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.

bankruptcy itself."[3] The ability of a bankruptcy court to enter a final order on a fraudulent transfer claim is less clear.[4] To the extent that the Constitution bars this Court from entering a final order on the Plaintiff's fraudulent transfer claim, this Court's ruling on that claim should be construed as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).[5] Venue is appropriately laid in this District under 28 U.S.C. § 1409, and notice of the hearing on the cross-motions was properly given in all respects.

## II. BACKGROUND AND FINDINGS OF FACT

The facts of this case are neither voluminous nor complex. Based on the parties' motions and exhibits attached thereto, the Court finds that the following facts are undisputed.

Before filing her bankruptcy petition, the Debtor operated a travel agency. The Drabners solicited the Debtor's services in arranging a travel package and made a deposit of $11,429. The Debtor did not provide the travel package or refund the deposit, and the State of Utah eventually filed a criminal case against the Debtor alleging theft. The State of Utah also filed a second criminal

---

[3] *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 905 (Bankr. N.D. Ill. 2012).

[4] *Compare Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 565–66 (9th Cir. 2012) (bankruptcy courts may hear fraudulent transfer cases and issue proposed findings of fact and conclusions of law, but they cannot enter final orders) *with Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional.") *and Kimball Hill*, 480 B.R. at 907 ("The number of courts who have rejected a *Stern* challenge to the bankruptcy court's authority to enter final orders on a fraudulent transfer claim is, to the [sic] say the least, quite large.").

[5] *See Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2170 (2014) (when a bankruptcy court is confronted with a *Stern* claim, i.e., a claim on which a bankruptcy court is permitted to enter a final order by statute yet precluded from doing so by Article III of the Constitution, "the proper course is to issue proposed findings of fact and conclusions of law").

case against the Debtor regarding her interactions with one Lawrence Burrill ("Burrill"). As with the Drabners, Burrill made a deposit with the Debtor, who did not provide the travel package Burrill requested or refund his deposit.

The Debtor's attorney in the criminal matters, Jeffrey D. Salberg ("Salberg"), negotiated a deal with the prosecutor that would allow for dismissal of the theft charges if the Debtor repaid the deposits to the Drabners and Burrill. Because the Debtor lacked the necessary funds, her mother, Sharon Baldwin, arranged to make the payments. On or about January 23, 2013, she wired $18,747 to Salberg's trust account.[6] On January 25, 2013, Salberg wrote two checks drawn on his trust account—one to the Drabners for $11,429 and the other to Lawrence Burrill for $7,318. The prosecutor delivered the checks to the respective parties, and the charges against the Debtor were dismissed.[7]

On February 8, 2013, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Plaintiff filed the present adversary proceeding on December 23, 2013, seeking to avoid and recover the transfer to the Defendants for the benefit of the estate.[8]

## III. DISCUSSION

*A. Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(a), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court is required to "grant summary judgment if

---

[6] The funds came either from Sharon Baldwin herself or The Baldwin Trust a/k/a The Baldwin Living Trust (the "Family Trust"), a trust created and funded by Sharon Baldwin and her late husband, Roy D. Baldwin. Whether the funds came from Sharon Baldwin or the Family Trust is not material for the purposes of the parties' cross-motions.

[7] The checks were honored and paid on January 31, 2013.

[8] Burrill had previously settled with the Plaintiff.

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[10] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[11] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[12]

The moving party bears the burden to show that it is entitled to summary judgment,[13] including the burden to properly support its summary judgment motion as required by Rule 56(c).[14] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[15] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[16] Entry of summary judgment is required, however, "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[17]

---

[9] Fed. R. Civ. P. 56(a).
[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[11] *Id.*
[12] *Id.* at 249.
[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[14] *See Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[15] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).
[16] *Celotex*, 477 U.S. at 324.
[17] *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007) (quoting *Celotex*, 477 U.S. at 322)). "Rule 56(c) exists to resolve cases where there is failure to establish an essential element." *Bruner*, 506 F.3d at 1025 n.5.

When considering a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party,[18] but the Court does not weigh the evidence or make credibility determinations.[19] On cross-motions for summary judgment, each motion must be considered independently.[20]

As an initial matter, the Court must determine what evidence it may consider in ruling on the cross-motions. The Defendants objected to consideration of the Debtor's Rule 2004 examination transcript and the declarations of Sharon and Ryan Baldwin[21] on the ground that they constitute inadmissible hearsay.[22] The Defendants explicitly renewed their objection, at least as regards Sharon Baldwin's declaration, at the hearing held on June 19.

Any material offered to support or dispute a fact must be admissible in evidence.[23] Nevertheless, "[a]t the summary judgment stage, evidence need not be submitted 'in a *form* that would be admissible at trial.'"[24] Instead, "the content or substance of the evidence must be admissible."[25] This distinction recognizes that affidavits, for example, which are typically inadmissible at trial as hearsay, are an appropriate form of evidence on a motion for summary judgment, but the content of the affidavit must be admissible.[26] Where the content of the affidavit

---

[18] *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013) (citation omitted).
[19] *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).
[20] *Rajala v. U.S. Bank (In re Christenson)*, 483 B.R. 743, 746 (Bankr. D. Kan. 2012).
[21] Ryan Baldwin is the Debtor's brother.
[22] Docket No. 21, Defendants' Opposition to the Trustee's Motion for Summary Judgment, and Their Reply to His Opposition to Their Motion for Summary Judgment, at 8 n.1.
[23] *See* Fed. R. Civ. P. 56(c)(2).
[24] *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex*, 477 U.S. at 324) (emphasis added).
[25] *Id.* (citation and internal quotation marks omitted).
[26] *Id; see also Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013) ("Although affidavits are entirely proper on summary judgment, the content or substance of the evidence contained therein must be admissible.").

is inadmissible, however, courts cannot consider that content at summary judgment because even a subsequent change in form would not transform its inadmissible character.[27]

Based upon these principles, the Court concludes that the Debtor's Rule 2004 examination transcript and the declarations of Sharon and Ryan Baldwin are permissible forms of evidence because the evidence contained therein could be presented in an admissible form at trial. Therefore, the Court will consider these pieces of evidence in ruling on the parties' cross-motions, but to the extent that they contain inadmissible content, such as hearsay statements, the Court will disregard that inadmissible content.

*B. Plaintiff's Preferential Transfer Claim*

While the Plaintiff's complaint alleges that the transfer at issue was preferential or fraudulent, with the exception of a brief section in the Defendants' motion, the parties confined their arguments exclusively to 11 U.S.C. § 547.[28] That section serves a dual purpose: "to discourage actions by creditors that might prematurely compel the filing of a petition and to secure an equal distribution of assets among creditors of like class."[29] Section 547(b) provides:

> [T]he trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made
> (A) on or within 90 days before the date of the filing of the petition;

[27] *See Argo*, 452 F.3d at 1199. This principle is not confined to affidavits. "Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment. We see no principled reason to permit hearsay in depositions, but bar its inclusion in affidavits." *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995).

[28] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

[29] *Gillman v. Scientific Research Prods. Inc. of Del. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 554 (10th Cir. 1995) (citation omitted).

> . . . and
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

A trustee bears the burden to prove these elements by a preponderance of the evidence,[30] and a failure to prove even one of the elements negates the trustee's claim.[31] For the purposes of these cross-motions, the parties concede that all elements have been satisfied except for the threshold requirement that the transfer be of "an interest of the debtor in property."

The Bankruptcy Code does not define that phrase, but guidance as to its meaning "is to be drawn from the definition of 'property of the estate' set forth in § 541(a)."[32] Section 541(a)(1) defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case," which the Supreme Court has held is coextensive with § 547(b)'s "an interest of the debtor in property."[33] In other words, "an interest of the debtor in property" as used in § 547(b) "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."[34] "'Generally, a transfer of money or property owned by a third person to a creditor of a debtor is not a preference.'"[35]

---

[30] *Redmond v. Rainstorm, Inc. (In re Lone Star Pub Operations, LLC)*, 465 B.R. 212, 215 (Bankr. D. Kan. 2012).
[31] *Mama D'Angelo, Inc.*, 55 F.3d at 554.
[32] *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000) (citations omitted).
[33] *Begier v. IRS*, 496 U.S. 53, 59 n.3 (1990).
[34] *Id.* at 58; *see also Redmond*, 465 B.R. at 216 ("The threshold requirement for [a preference action] is the property transferred must have belonged to the debtor. Avoiding preferential . . . transfers recovers property which would have been available for distribution to creditors but for the transfers.").
[35] *Krommenhoek v. Estate of Pfankuch Food Servs., Inc. (In re Pfankuch)*, 393 B.R. 18, 24 (Bankr. D. Idaho 2008) (quoting 4 Collier on Bankruptcy ¶ 547.03[2] (Alan N. Resnick & Henry

"For purposes of most bankruptcy proceedings, 'property interests are created and defined by state law.'"[36] "Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."[37]

*1. The Dominion or Control and Diminution of the Estate Tests*

A transfer of property constitutes a transfer of "an interest of the debtor in property" if the "debtor exercised dominion or control over the transferred property" or if the transfer "deprives the bankruptcy estate of resources which would otherwise have been used to satisfy the claims of creditors."[38] The former test is appropriately referred to as the dominion/control test, while the latter is called the diminution of the estate test.[39]

---

J. Sommer eds., 15th ed.)); *see also Ellenberg v. First Nat'l Bank (In re Hollvey)*, 15 B.R. 850, 851 (Bankr. N.D. Ga. 1981) ("[T]here is no reason why a third-party cannot take it upon himself to pay the debts of another, and therefore help in his own way to facilitate the debtors [sic] eventual fresh start.").

[36] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)).

[37] *Id.* (citation and internal quotation marks omitted).

[38] *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255–56 (10th Cir. 2008). The Defendants argue that the two tests should be read in the conjunctive—that is, a plaintiff would have to satisfy both tests in order to avoid an alleged preference. The Court does not need to address the issue because it concludes that the Plaintiff has satisfied neither test. But the Court does note that the text of *Marshall* appears to support a disjunctive reading of the tests.

[39] *Id.* The Plaintiff questions whether it is appropriate to use these tests to determine whether the transfer was of "an interest of the debtor in property." Citing *Moses*, the Plaintiff argues that the central and "only relevant analysis under § 547(b)" is whether the Debtor had an interest in the transferred property. *See Moses*, 256 B.R. at 648. *Moses*, however, applied the diminution of the estate test: "the fundamental inquiry under § 547(b) will be whether the Debtor had a legal or equitable interest in the property transferred such that the transfer at issue *diminished or depleted the Debtor's estate*." *Id.* at 645 (emphasis added). *Marshall* interpreted *Moses* in this way. *See Marshall*, 550 F.3d at 1255–56. At bottom, the dominion/control and diminution of the estate tests are consonant with § 547(b) and are useful guides in determining whether the transferred property "would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58.

The dominion/control test analyzes the degree of control a debtor has over the property at issue to determine "whether the debtor has 'an interest' in the property such that its transfer may be avoided under § 547(b)." *MBNA Am. Bank, N.A. v. Meoli (In re Wells)*, 561 F.3d 633, 635

Under the dominion/control test, the debtor need not have actual possession of the property at issue; evidence of an ability to direct the property's distribution is sufficient.[40] The Plaintiff alleges that the Debtor directed Salberg to pay the funds to the Drabners.[41] First, the Plaintiff cites to no materials in the record to support this assertion of fact. Second, this allegation has superficial appeal in that the Debtor would clearly want Salberg to pay the Drabners, but it masks the party who was truly directing the distribution of the funds: Sharon Baldwin. She controlled the funds, and Salberg paid them to the Drabners at her direction.

Evidence of Sharon Baldwin's control is shown by Salberg's deposition testimony, wherein he stated that the funds were for a "specific purpose" and "if that purpose wasn't going to be consummated, [the funds] would have been returned to Mrs. Baldwin, the mother."[42] This statement

(6th Cir. 2009) (citation omitted); *see also Riley v. Nat'l Lumber Co. (In re Reale)*, 584 F.3d 27, 31 (1st Cir. 2009) ("When determining whether certain funds are considered 'an interest of the debtor in property,' the ability of the debtor to exercise control over the property can be determinative."). The diminution of the estate test also determines "whether property that is transferred belongs to the debtor for purposes of § 547" and states that "a transfer of an interest of the debtor in property occurs where the transfer diminishes directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one." *Adams v. Anderson (In re Superior Stamp & Coin Co.)*, 223 F.3d 1004, 1007 (9th Cir. 2000) (citation an internal quotation marks omitted); *see also Meoli v. MBNA Am. Bank, N.A. (In re Wells)*, 382 B.R. 355, 361 (B.A.P. 6th Cir. 2008) ("Whether a transfer depletes a debtor's estate is considered in the context of determining whether the threshold requirement has been met that the transfer was of an interest of the debtor in property."). If a transfer does not diminish a debtor's estate, then the transferred property "would not have been available for distribution to his creditors in a bankruptcy proceeding, [and] the policy behind the avoidance power is not implicated." *Begier*, 496 U.S. at 58.

[40] *Marshall*, 550 F.3d at 1256; *see also Bank of Am., N.A. v. Mukamai (In re Egidi)*, 571 F.3d 1156, 1161 (11th Cir. 2009) ("The inquiry is whether [the debtor] controlled the disposition of the funds, not whether she mechanically made the payment."); *Wells*, 382 B.R. at 361 ("It makes no difference that Debtor never had the cash in hand since she had sufficient control over the disposition of the funds.").

[41] Docket No. 15 at 2.

[42] Docket No. 10-1 at 21, Deposition of Jeffrey D. Salberg 21:19-23.

is supported by Sharon Baldwin's declaration, in which she stated that the funds were provided "with the belief and understanding that the money would be paid to the Drabners and Burrill in full settlement and satisfaction of their claims against the Debtor, and that the payments would result in dismissal of the Criminal Cases."[43] These facts demonstrate that the Debtor could not have directed Salberg to give the funds to her or use them for another purpose. Sharon Baldwin designated a singular purpose for the money—to pay the Drabners and Burrill in order to obtain a dismissal of the criminal charges against her daughter—and Salberg fulfilled this purpose by writing checks to the Drabners and Burrill. Viewing these facts in the light most favorable to the Plaintiff, the Court concludes as a matter of law that the Debtor lacked the ability to direct the distribution of the funds; that ability lay in Sharon Baldwin's control alone.

The relevant inquiry under the diminution of the estate test is whether the transferred property "'would have been part of the estate had [it] not been transferred before the commencement of bankruptcy proceedings.'"[44] Even if the property was a part of the estate for only an instant, that is sufficient to satisfy this test.[45] Here, the record before the Court on summary judgment establishes that the funds transferred to the Drabners were never property of the Debtor's estate.

The Plaintiff advances essentially two arguments in support of his position that the Debtor had an interest in the funds at issue, which were therefore part of the estate. First, Sharon Baldwin gifted the funds to her daughter. Second, because Salberg was the Debtor's attorney and agent, when the funds were wired to his trust account, he held them as a fiduciary for her exclusive benefit.[46]

---

[43] Docket No. 15 at 30, Declaration of Sharon Baldwin, ¶ 13. Ryan Baldwin's declaration repeats this statement. Docket No. 15 at 34, Declaration of Ryan Baldwin, ¶ 14.
[44] *Marshall*, 550 F.3d at 1258 (quoting *Begier*, 496 U.S. at 58).
[45] *See id.*
[46] Docket No. 15 at 13–15.

Under Utah law, a gift made during the lifetime of the donor—an inter vivos gift—requires a "clear and unmistakable intention on the part of the donor to make a gift of [her] property . . . ."[47] In addition, there must be an irrevocable delivery to, and acceptance by, the donee.[48] "An important purpose of the delivery requirement is to avoid the hedging of a would-be donor who wishes to retain certain benefits of ownership, including the control of the gift property, while designating another as the recipient of the property during the donor's lifetime."[49]

The Plaintiff relies on the declarations of Sharon and Ryan Baldwin and Salberg's affidavit to support the assertion that Sharon Baldwin gifted the funds to the Debtor. In relevant part, Sharon Baldwin's declaration states: "[o]n or about January 23, 2013, the Family Trust or I gifted $18,747 to the Debtor to be used to pay and settle the claims of the Drabners and Burrill. These funds were delivered directly to Salberg."[50] Ryan Baldwin's declaration repeats this statement nearly verbatim.[51] Salberg's affidavit states: "Ms. Baldwin's family gifted the funds for my attorney fees and settlement, which funds were wired directly to my trust account."[52] Whether the funds were a gift is a legal conclusion, which a court should exclude from consideration on summary judgment.[53] Therefore, the Court will not consider the statements in the declarations and affidavit that Sharon

---

[47] *Jones v. Cook*, 223 P.2d 423, 425–26 (Utah 1950) (citation and internal quotation marks omitted).
[48] *In re Estate of Ross v. Ross*, 626 P.2d 489, 491 (Utah 1981). These elements must be proved by clear and convincing evidence. *Id.*
[49] *Id.* at 492.
[50] Docket No. 15 at 30, Declaration of Sharon Baldwin, ¶ 13.
[51] Docket No. 15 at 34, Declaration of Ryan Baldwin, ¶ 14.
[52] Docket No. 15 at 40, Affidavit of Jeffrey D. Salberg, ¶ 10.
[53] *See Peck v. Horrocks Eng'rs, Inc.*, 106 F.3d 949, 956 (10th Cir. 1997) (district court did not abuse its discretion in disregarding affidavit produced in opposition to summary judgment motion that merely stated a legal conclusion); *see also Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970) ("[S]ummary judgments cannot be made to rest on purely conclusory statements, either in pleading or affidavit form.").

Baldwin gifted the funds to the Debtor to the extent that those statements offer the legal conclusion that the funds were a gift under Utah law.[54]

The Plaintiff's claim that Sharon Baldwin gifted the funds to the Debtor is contradicted by Sharon Baldwin's continuing control over the funds after she wired them to Salberg's trust account. As discussed previously, Sharon Baldwin provided the funds for a specific purpose, but if that purpose was not going to be carried out, the funds would have been returned to her.[55] In addition, the Debtor—the supposed donee—did not identify the funds as a gift to her during her Rule 2004 examination. After denying that the funds were loaned to her, she declined to call the funds a gift and instead stated that her mother "provided the money to [the Drabners]" and that "[i]t only went through [Salberg] because he was an attorney. She gave [the Drabners] the money that . . . I owed them."[56] In short, these facts, viewed in the light most favorable to the Plaintiff, show that Sharon Baldwin never irrevocably delivered the funds to the Debtor, and the Debtor never accepted the funds. Therefore, the Court concludes that Sharon Baldwin did not gift the funds to the Debtor under Utah law.

The Plaintiff cites *In re Adams*[57] and *In re Chesapeake Associates, Limited Partnership*[58] to support his argument that the Debtor had an interest in the funds because they were in Salberg's trust

---

[54] The Court will not completely exclude those statements from consideration, however, because they may point toward the existence of certain facts, such as whether Sharon Baldwin had an intention to make a gift of the funds to the Debtor. Accordingly, the Court will consider the statements for the purpose of identifying whether they show that a fact is or cannot be genuinely disputed.

[55] *See* Docket No. 10-1 at 21, Deposition of Jeffrey D. Salberg 21:19-23.

[56] Docket No. 15 at 47, Partial Transcript of 2004 Examination of Vicki Baldwin, 5:72–83.

[57] *Kelley v. Citizens & S. Nat'l Bank of Thomasville (In re Adams)*, 102 B.R. 271 (Bankr. M.D. Ga.1989).

[58] *Rajala v. Holland Corp. (In re Chesapeake Assocs., Ltd. P'ship)*, 141 B.R. 737 (Bankr. D. Kan. 1992).

account. Those cases, however, are distinguishable. In *Adams*, the debtor sold his business, and the buyer deposited the purchase price funds into the trust account of the attorneys handling the closing. Under the terms of the sale contract, the attorneys disbursed the majority of those funds to a creditor, which the trustee sought to avoid as a preferential transfer. The defendant argued that the payment did not constitute a preference because it was made by a third party. The court disagreed, noting that the "essential factor for a preference action is that the Debtor have an interest in the property transferred so that the estate is thereby diminished."[59] The court concluded that the funds generated from the sale of the business clearly belonged to the debtor and were property of the estate. The court also noted that the attorneys were acting as the debtor's agent in the disbursement of the funds.

The fact pattern in the present case is substantially different. Here, the funds at issue were not generated by the sale of the Debtor's assets; they were generated by a payment made by Sharon Baldwin. When the attorneys in *Adams* held the purchase price funds, they were holding money that represented an asset that belonged to the debtor prior to its deposit into the trust account. By contrast, when Salberg held the funds, he was holding money that did not belong to the Debtor before its deposit into Salberg's trust account. The fact that the attorneys in *Adams* were acting as the debtor's agent is incidental to the larger and distinguishing point that the purchase price funds belonged to the debtor before they ended up in the trust account. Therefore, the Plaintiff's argument that funds in an attorney's trust account constitute property of the client because the attorney is the client's agent is not supported by the facts of *Adams*.

In *Chesapeake Associates*, the debtor wrote two checks to the law firm that was acting as its agent for the purpose of settling a retainage claim with a subcontractor, and the law firm deposited

---

[59] *Adams*, 102 B.R. at 274.

those checks into its trust account for the debtor's benefit. During the preference period, the law firm wrote a check to the subcontractor, which deposited it into its own bank account. Because the funds at issue in *Chesapeake Associates* belonged to the debtor when they were deposited into the law firm's trust account, that case did not address the precise issue presently before the Court—namely, whether funds deposited into a debtor's attorney's trust account by a third party become property of the debtor's estate by virtue of that deposit.

Where Sharon Baldwin did not gift the funds to the Debtor, the simple fact that the funds were placed in Salberg's trust account did not automatically make those funds property of the Debtor. The funds were just like other monies in the trust account that did not belong to the Debtor. And just as those other monies would not be available for distribution to the Debtor's creditors, so too would the funds wired to Salberg's trust account not be part of the Debtor's estate had they remained in the trust account on the date the Debtor filed her bankruptcy petition.

The Court concludes that the facts that are not genuinely disputed demonstrate as a matter of law that the Debtor did not have dominion or control over the funds and the transfer of the funds did not diminish the Debtor's estate. Therefore, the Plaintiff has failed to make a showing sufficient to establish the threshold requirement of a § 547(b) claim—that the transfer be of "an interest of the debtor in property." Because that element is essential to the Plaintiff's case and he would bear the burden to prove it at trial, the Court must enter summary judgment in favor of the Defendants on the Plaintiff's preferential transfer claim.

*2. The Earmarking Doctrine*

Both parties argue that the earmarking doctrine does not apply to this case. Earmarking is a judicially created doctrine that excepts certain transfers from the circumference of § 547.[60] Courts initially applied it in codebtor cases—i.e., where a debtor was obligated on a debt and a third party served as a guarantor of the debt.[61] In those instances where the guarantor paid the creditor during the preference period, courts declined to consider that payment a preferential transfer.[62] The guarantor's payment did not implicate the policy behind § 547 because it did not diminish the estate, the property transferred did not belong to the debtor, and to avoid the payment as a preferential transfer "would result in double payment of the debt by the guarantor."[63]

While some courts extended the earmarking doctrine "to situations where the new creditor is not a guarantor but merely loans funds to the debtor for the purpose of enabling the debtor to pay the old creditor," this expansion of the doctrine has drawn some criticism.[64] The Tenth Circuit Bankruptcy Appellate Panel rejected the application of the earmarking doctrine beyond codebtor cases in *Moses*.[65] The scope of the earmarking doctrine has not been definitively settled by the Tenth Circuit Court of Appeals, however, which declined to address the issue in *Marshall*.[66] This Court also does not need to address the extent of the earmarking doctrine's application because even if it did apply to this case, the Court has already determined that the Plaintiff cannot avoid the payment

[60] *See Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 834 (B.A.P. 1st Cir. 1999); *see also Moses*, 256 B.R. at 648.
[61] *Superior Stamp & Coin Co.*, 223 F.3d at 1008.
[62] *See Neponset River Paper Co.*, 231 B.R. at 834.
[63] *Id.*; *see also Moses*, 256 B.R. at 646 ("Courts also noted that earmarking was equitable because if the transfer were avoided, the codebtor would be subject to double liability.").
[64] *Moses*, 256 B.R. at 646 (citations and internal quotation marks omitted).
[65] *Id.* at 651.
[66] *Marshall*, 550 F.3d at 1257 n.5.

to the Drabners as a preferential transfer because it was not a transfer of an interest of the debtor in property. Therefore, there is no need to invoke the earmarking doctrine to except the transfer to the Drabners from the reach of § 547.

*C. Plaintiff's Fraudulent Transfer Claim*

As an alternative means to avoid the transfer to the Drabners, the Plaintiff pleads fraudulent transfer under § 548 and § 544 and Utah Code Annotated § 25-6-5 and § 26-6-6(1).[67] The Plaintiff did not move for summary judgment on either the § 548 or the § 544 and state law fraudulent transfer claim, but the Defendants did move for summary judgment on the § 548 claim. The Defendants' motion, however, does not mention the § 544 and state law fraudulent transfer claim. The party seeking summary judgment must "identify[] each claim . . . on which summary judgment is sought."[68] Because the Defendants did not move for summary judgment on the § 544 and state law fraudulent transfer claim, the Court will only address the § 548 claim in this ruling.[69]

A fraudulent transfer claim under § 548 has the same threshold requirement as a preferential transfer claim—the transfer must be of an interest of the debtor in property.[70] The Plaintiff's

---

[67] In spite of the apparent typographical error, it appears that the Plaintiff is bringing his state law fraudulent transfer claim under Utah Code Annotated § 25-6-5 and § 25-6-6(1).

[68] Fed. R. Civ. P. 56(a).

[69] To avoid a transfer under § 544(b), the transfer must be of "an interest of the debtor in property." Although the Court has determined as a matter of law that the transfer to the Drabners was not of an interest of the Debtor in property with regard to the Plaintiff's § 547(b) claim, because the Defendants did not raise the § 544 and state law fraudulent transfer claim in their motion, the Court cannot enter summary judgment in the Defendants' favor on that claim without "giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f); *see also Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011) ("A court may grant a motion for summary judgment on grounds not raised by a party only 'after giving notice and a reasonable time to respond.'").

[70] Under § 548(a)(1), a trustee "may avoid any transfer . . . of an interest of the debtor in property . . . ." *See also Redmond*, 465 B.R. at 216 ("The threshold requirement for [a preferential or a fraudulent transfer] is [that] the property transferred must have belonged to the debtor.").

fraudulent transfer claim fails on the same ground as his preferential transfer claim—the property transferred to the Drabners did not belong to the Debtor. For that reason, the Defendants' motion for summary judgment should be granted as to the Plaintiff's § 548 claim.

## IV. CONCLUSION

Sharon Baldwin wired funds to the trust account of her daughter's criminal defense attorney for the purpose of repaying parties from whom the Debtor was charged with stealing money. The defense attorney duly paid the funds to those parties. The Court concludes as a matter of law that the transfer of the funds at issue was not a transfer of "an interest of the debtor in property." Therefore, the Court GRANTS the Defendants' motion and DENIES the Plaintiff's motion. A separate Order and Judgment will be issued in accordance with this Memorandum Decision.

______________________________END OF DOCUMENT______________________________

**______ooo0ooo______**

**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Matthew M. Boley
PARSONS KINGHORN HARRIS, P.C.
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111
*Attorney for Plaintiff*

J. Thomas Beckett
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
*Attorney for Defendants*